## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDDIE MONTGOMERY, JR., | : | |
| | : | HONORABLE NOEL L. HILLMAN |
| Plaintiff, | : | |
| | : | CIVIL NO. 07-4500 (NLH) |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | **OPINION** |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**APPEARANCES:**

Brian G. Smith, Esquire
Community Health Law Project, Inc.
900 Haddon Avenue, Suite 400
Collingswood, NJ 08108

*Attorney for Plaintiff*

Ralph J. Marra, Jr.
Acting United States Attorney
    By:  Tomasina Digrigoli, Esquire
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

*Attorney for Defendant*

**HILLMAN, District Judge**:

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff, Eddie Montgomery, Jr., for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff did not satisfy the criteria of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing") prior to the expiration of his insured status on March 31, 1999.  For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a fifty-seven year old man, had been employed off and on, primarily as a window maker, until in or around November 2000.[1]  (R. at 19, 157-61.)  On January 9, 2003, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") benefits, alleging an inability to work since March 31, 1999 due to spinal stenosis, curved spine, high blood

---

[1] Although Plaintiff testified before the ALJ that he has not worked since March of 1999, his earnings record shows that he continued to be employed into 2000, he reported on his Disability Report that he stopped working on June 20, 2000, and his former employer confirmed on March 23, 2004 that Plaintiff worked there from July 12, 2000 until November 2000.  (R. at 29, 44, 157-61, 177-86.)

pressure, eye problems, and asthma.  (Id. at 17, 177-86.)  This application was initially denied on July 11, 2003.  (Id. at 70, 72-76.)  Thereafter, upon reconsideration on May 21, 2004, Plaintiff's application was approved, with a primary diagnosis of back disorder (discogenic & degenerative) and a secondary diagnosis of asthma, and a disability onset date of January 9, 2003.  (Id. at 71.)

Plaintiff also protectively filed an application for Disability Insurance Benefits ("DIB") on January 20, 2004, which was deemed to be protectively filed on January 9, 2003, because Plaintiff's application for SSI was then under reconsideration. (Id. at 17.)  This application for DIB was ultimately denied after reconsideration on May 28, 2004, when it was determined that Plaintiff was not disabled on or before the date he was last insured for DIB, March 31, 1999.[2]  (Id.)

On July 7, 2004, Plaintiff filed a timely appeal of the denial of his DIB benefits and requested a hearing.  (Id. at 85.) A hearing was held on December 14, 2005 before ALJ Daniel W. Shoemaker, Jr.  (Id. at 34-61.)  Following the hearing, the record was held open for 30 days at the request of Plaintiff's

---

[2] Through his employment, Plaintiff only earned sufficient quarters of DIB coverage to remain insured through March 31, 1999.  (R. at 163-64.)

counsel for submission of additional evidence, but nothing further was received.  (Id. at 18.)  After the hearing, the ALJ also requested a consultative psychological examination and intelligence testing of Plaintiff.  (Id.)  This testing was conducted by Dr. Kenneth Goldberg on February 20, 2006 and March 8, 2006, and his reports were subsequently entered into the record.  (Id. at 18, 301-14.)  Plaintiff's counsel was then given an opportunity to respond to the additional medical evidence, and on May 3, 2006, Plaintiff's counsel submitted comments regarding Dr. Goldberg's reports and a brief that were entered into the record.  (Id. at 18, 145-46.)

On May 25, 2006, ALJ Shoemaker issued his decision denying Plaintiff's application for DIB.  (Id. at 17-32.)  As a preliminary matter, ALJ Shoemaker found that Plaintiff only met the non-disability requirements for DIB set forth in Section 216(I) of the Social Security Act and was insured for benefits through March 31, 1999.  (Id. at 31.)  Then, performing the five step evaluation pursuant to 20 C.F.R. § 404.1520, ALJ Shoemaker found first that Plaintiff had not engaged in substantial gainful activity since March 31, 1999, the alleged date of disability onset.  (Id.)  With respect to step two, the ALJ found that Plaintiff had a mental deficiency impairment that was "severe" on

or before his insured status expired on March 31, 1999.  (Id.)
At step three, however, the ALJ found that Plaintiff's mental
deficiency, although severe, did not meet the requirements of any
impairments on the Listing.  (Id.)  At step four, the ALJ then
found that Plaintiff's impairment "did not prevent him from
performing his past relevant work on or before the date he was
last insured for [DIB], March 31, 1999."  (Id. at 32.)
Specifically, the ALJ found that "[o]n or before March 31, 1999,
[Plaintiff] was restricted to work involving simple instructions
and simple repetitive tasks," but that Plaintiff's "past relevant
work as a window maker did not require the performance of work
functions precluded by his medically determinable impairment on
or before the date he was last insured for [DIB], March 31,
1999."  (Id. at 31.)  Having found that Plaintiff was not
precluded from performing his past relevant work, the ALJ was not
required to proceed to step five, and determined that Plaintiff
was not disabled under the Social Security Act on or before the
expiration of his DIB coverage.  (Id. at 32.)

     Plaintiff filed a Request for Review of Hearing Decision on
July 25, 2006.  (Id. at 12-13.)  That request was denied by the
Appeals Council on August 3, 2007.  (Id. at 6-8.)  Thereafter, on
September 20, 2007, Plaintiff filed the instant action.

**II.   DISCUSSION**

   **A.   Standard of Review**

   Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for DIB.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the  Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

   A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly

detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting <u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. <u>Id.</u> (citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. §

1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

9

5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.[3]  See Poulos v. Commissioner

---

[3] The Court notes that the Third Circuit Court of Appeals has expressly stated in a footnote that neither party bears the burden of proof with respect to step three because it involves a "conclusive presumption based on the listings." Sykes v. Apfel, 228 F.3d 259, 263 n.2 (3d Cir. 2000).  The Third Circuit cited a footnote in Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) as support for this proposition.  However, the Sykes panel however, appears to have misinterpreted the Supreme Court's footnote in that case.  This Court reads Bowen to suggest only that the burdens assigned to each step only need be carried if the analysis in fact reaches that step.  The Bowen court's reliance on Bluvband v. Heckler, 730 F.2d 886 (2d Cir. 1984) is telling in this respect.  In Bluvband, the court held that "[t]he claimant carries the burden, encompassed by the first four steps, of proving disability," and went on to explain that "under this approach the claimant must meet the fourth step only if she is unable to establish that her impairment is listed in Appendix 1 of the regulations." 730 F.2d at 891.  Accordingly, this Court will not follow the Third Circuit's dicta in Sykes regarding the burden at step three. This Court's conclusion is supported by our review of the Third Circuit's articulation of the respective burdens both before and after its decision in Sykes. Our Court of Appeals has consistently held, both before and after Sykes, that the burden of proof with respect to the first four steps of the analysis lies with the claimant.  Cf., Poulos v. Commissioner of Social

of Social Security, 474 F.3d 88, 92 (3d Cir. 2007); Wallace, 722 F.2d at 1153.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

C.    **Analysis**

Plaintiff presents several arguments focusing on step three for review.  Plaintiff argues that the ALJ's decision should be reversed because: (1) the ALJ's decision was not supported by substantial evidence since he failed to properly consider Plaintiff's memory impairment, dysthymia, asthma, and back disorder when determining whether he met Listing 12.05(C); (2) the ALJ failed to consider all of Plaintiff's impairments in combination when determining whether he met Listing 12.05(C) as required by 20 C.F.R. § 416.923; and (3) the ALJ failed to fully and fairly develop the record with respect to Dr. Kenneth Goldberg's evaluation of Plaintiff's memory impairment and

---

Security, 474 F.3d 88, 92 (3d Cir. 2007); with Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).

dysthymia by not inquiring whether these conditions existed as of March 1999.  Each of these arguments will be addressed in turn.

    1.   <u>Whether The ALJ's Finding At Step Three That Claimant Did Not Meet Listing 12.05(C) Was Supported By Substantial Evidence.</u>

Listing 12.05(C) provides that a person is disabled where he or she has "[a] valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing additional and significant work-related limitation of function," and the onset of the IQ impairment occurred before the age of 22. 20 C.F.R. Part 404, Subpart P, Appendix 1 (emphasis added).  The Social Security Administration has clarified that in order to find an "additional and significant work-related limitation of function," the "other impairment" must be "severe" as defined in sections 404.1520(c) and 416.920(c).  <u>See</u> Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (August 21, 2000).

Sections 404.1520(c) and 416.920(c) provide that in order to be "severe" an impairment or combination of impairments must "significantly limit your physical or mental ability to do basic work activities."  <u>See</u> <u>also</u> 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to

do basic work activities."). The regulations define "basic work activities" to include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

As summarized above, the ALJ found that Plaintiff met the IQ score and onset requirements of Listing 12.05(C). (R. at 23.) However, the ALJ rejected Plaintiff's contention that he satisfied the "other impairment" requirement of Listing 12.05(C) on or before the expiration of his DIB coverage on March 31, 1999. (Id. at 23-24.) In so finding, the ALJ specifically noted that the objective medical record contained "no evidence of low back pain lasting for twelve consecutive months or more." (Id. at 24.) Further, the ALJ noted, "the record is devoid of

13

documentation substantiating a dysthymic disorder for twelve
consecutive months or more on or before the date he was last
insured for [DIB], March 31, 1999."  (Id.)  The ALJ also noted
that Plaintiff's borderline intellectual functioning did not
prevent him from working through the expiration of his DIB
coverage, as evidenced by his earnings records.[4]  (Id.)

In arriving at these determinations, the ALJ carefully and
thoroughly evaluated the evidence in the record.  This included
Plaintiff's statements and testimony, the findings of Plaintiff's
treating physicians, and the findings of the State Agency medical
consultants.  Indeed, the ALJ summarized in detail the findings
of Plaintiff's treating physicians at Our Lady of Lourdes Medical
Center ("Lourdes"), as well as Dr. Khona Nithyashuba and Dr.

---

[4] Having determined in his analysis of step two that Plaintiff's asthma
did not have any "significant vocational impact" on or before the expiration
of Plaintiff's DIB coverage, the ALJ did not address it again specifically
during his analysis of step three.  (R. at 20.)  The ALJ noted in so finding
that Plaintiff's hospital records from Our Lady of Lourdes Medical Center,
dated July 2-3, 2000, showed that his lungs were clear to auscultation without
rales, rhonchi, and wheezing, or shortness of breath.  (Id.)  The ALJ also
noted Dr. Khona's finding on May 4, 2004 that Plaintiff had no breathing
difficulties as his lungs were clear to auscultation with normal percussion
and diaphragmatic motion, and there was no significant chest wall abnormality.

Kenneth Goldberg.[5],[6]  The ALJ found that the results of stress testing Plaintiff underwent at Lourdes on July 3, 2000 showed that he had no physical limitation and supported a finding of his being able to perform heavy work.  (Id. at 25-26.)  Additionally, the ALJ noted that Dr. Khona's Report, dated May 4, 2004, showed that Plaintiff lived alone and was able to cook, clean, and take care of his personal hygiene, and showed no evidence of impaired judgment or significant memory impairment.  (Id. at 26.)  The ALJ also noted that Dr. Khona found most of Plaintiff's complaints to be subjective and opined that he could be trained for sedentary work.  (Id.)  Likewise, the ALJ noted that Dr. Goldberg's Report, dated February 20, 2006, showed that Plaintiff had fair insight and fairly good judgment, was independent in self care, had friends and maintained those relationships, had family who were involved in his life, was competent to manage his own finances, and was able to come to the examination by bus.  (Id. at 27.) The ALJ noted that Plaintiff was not taking psychoactive

_____

[5] Having determined in his analysis of step two that Plaintiff's medical records from Broadway Family Practice, which indicated that Plaintiff had first treated there on July 21, 1998 for back pain, were not sufficient to demonstrate that Plaintiff suffered from a severe impairment prior to the expiration of his DIB coverage, the ALJ did not address them again specifically during his analysis of step three.  (R. at 20.)

[6] Although Plaintiff asserted that he had been treated at Cooper Medical Hospital, the ALJ noted that attempts to obtain medical records of such treatment were unsuccessful as no records were located.  (R. at 25, 275-78.)

15

medications and that Dr. Goldberg saw no reason for him to do so. (Id.)  The ALJ also noted that Plaintiff's Global Assessment Functioning ("GAF") score indicated only moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (Id.)  The ALJ took particular note of Dr. Goldberg's finding that Plaintiff did not show overt signs of intellectual deficiency, but had a poor fund of information, and his belief that Plaintiff's mood would be elevated were he able to get a job and work.  (Id.)

The ALJ also summarized in detail findings of the State Agency medical consultant and Plaintiff's own statements and testimony, although he did not ultimately grant either significant weight.  The ALJ noted that the State Agency medical consultant found on May 21, 2004 that Plaintiff maintained the Residual Functional Capacity to perform a reduced range of sedentary work, but gave no weight to this assessment because no opinion was rendered about Plaintiff's condition prior to the expiration of his DIB coverage.  (Id. at 26.)  The ALJ also noted Plaintiff's testimony that he was forced to stop working because of his back pain and that he had not worked since March 31, 1999. (Id. at 25, 28.)  However, the ALJ found that "[v]arious medical experts have made statements illustrating that the impairments

16

were not as debilitating as suggested by the claimant on or before his insured status expired." (Id. at 25.)  Moreover, the ALJ found Plaintiff's credibility to be questionable in light of the fact that his earnings records, his responses to a disability questionnaire, and contact with his former employer all flatly contradicted his testimony, showing that he worked until November 2000.  Considering all of the evidence, the ALJ thus concluded that Plaintiff failed to satisfy the "other impairment" requirement of Listing 12.05(C) on or before the expiration of his DIB coverage.

Plaintiff disagrees with the ALJ's decision.  First, Plaintiff argues that the ALJ should have relied on the fact that Plaintiff was granted SSI benefits due to back disorder and asthma to find that Plaintiff satisfied that "other impairment" requirement of Listing 12.05(C).[7] (See Pl. Br. at 7.)  Since

----

[7] Alternatively, Plaintiff asserts that the ALJ should have obtained the medical records that were part of the SSI application. (Pl. Br. at 7.) However, Plaintiff gives no explanation of what those records are or why they were not submitted for inclusion in the record before the ALJ.  Following the hearing on December 14, 2005, the ALJ held open the record for 30 days at the request of Plaintiff's counsel for submission of additional evidence, but Plaintiff's counsel failed to make any further submissions.  (R. at 18.) Given Plaintiff's failure to provide any explanation or cite any authority in support of his argument on this point, his failure to supplement the record with any such documents when given the opportunity, and bearing in mind that Plaintiff's carries the burden of presenting medical findings that show his impairments match a Listing, see Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992), the Court finds Plaintiff's argument on this issue to be of no avail.

Plaintiff was found eligible for SSI benefits as of January 9, 2003, Plaintiff argues that "[i]t is impossible for a condition to be severe one day, and the day before not to meet the requirement of Listing 12.05(C)."[8]  (Id.)  However, Plaintiff's logic is flawed.  Although Plaintiff's condition as of January 9, 2003 warranted the award of SSI benefits, that does not necessarily mean that Plaintiff's condition nearly four years before, on or before March 31, 1999, was sufficiently severe to satisfy the requirements of Listing 12.05(C).  Indeed, a scenario could easily be imagined where the condition of someone who did not meet the requirements of Listing 12.05(C) could deteriorate over the course of nearly four years so as to qualify for SSI.

_____

[8] Although seemingly incongruous, the determination of the ALJ that Plaintiff is not entitled to DIB is in no way inconsistent with the SSA Regional Commissioner's determination that Plaintiff was entitled to SSI benefits.  The different results are simply a function of the divergent issues before the Regional Commissioner in determining Plaintiff's SSI application and the ALJ in this case and respective procedural histories.  Since SSI benefits cannot be granted retroactively, see SSR 83-20, the only issue before the Regional Commissioner was whether Plaintiff was disabled at the time he protectively filed his application for SSI benefits on January 9, 2003.  By contrast, since Plaintiff only earned sufficient DIB coverage to remain insured through March 31, 1999, (R. at 163-64), the issue before the ALJ with respect to Plaintiff's DIB claim was whether Plaintiff was disabled prior to the expiration of his DIB coverage on March 31, 1999.  The ALJ conducted this more searching and extensive review after a full hearing unlike the administrative determination regarding the SSI benefits.  Accordingly, the ALJ's determination that Plaintiff was not disabled prior to March 31, 1999 is in no way inconsistent with the Regional Commissioner's determination that Plaintiff was disabled on January 9, 2003.  Both the process and the scope of the inquiry were different.  In any event, it is the ALJ's decision, and only that decision, that is before this court.

The only issue at stake here is whether any of Plaintiff's conditions on or prior to March 31, 1999, either individually or combined, qualified as an "other impairment" under Listing 12.05(C).  As demonstrated above, the ALJ's opinion contained substantial evidence supporting his conclusion that none of Plaintiff's conditions rose to the necessary level on or before March 31, 1999.

Second, Plaintiff argues against the ALJ's finding that the record did not reflect that Plaintiff suffered from a dysthymic disorder for 12 or more consecutive months prior to the expiration of his DIB coverage by asserting that dysthymic disorders, by definition, last for at least two years.  (See Pl. Br. at 7.)  This argument, however, completely misses the point. At issue was not whether Plaintiff suffered from a dysthymic disorder for 12 or more months generally, but whether he so suffered prior to March 31, 1999 specifically.  Plaintiff was first diagnosed with a dysthymic disorder by Dr. Goldberg on February 20, 2006.  (R. at 27.)  However, at the same time, Dr. Goldberg found Plaintiff to be capable of independent self care and have fair insight and fairly good judgment.  (Id.)  Notably, Dr. Goldberg also opined that Plaintiff's mood would be elevated

were he able to get a job and work.  (Id.)  Thus, the ALJ was
able to marshal substantial evidence in support of his finding
that Plaintiff did not suffer from a dysthymic disorder prior to
the expiration of his DIB coverage.

Finally, Plaintiff argues that the ALJ failed to consider
his memory impairments above and beyond his IQ or dysthymic
condition.  (Pl. Br. at 8.)  However, in his opinion, the ALJ
noted Dr. Goldberg's Report, dated March 8, 2006, which showed
that Plaintiff's memory was significantly impaired when compared
to his IQ.  (Id.)  The ALJ then considered Plaintiff's mental
impairments and capacity to function on or before the expiration
of his insured status in four relevant spheres: (1) activities of
daily living; (2) social functioning; (3) concentration,
persistence or pace; and (4) episodes of decomposition.  (Id. at
27.)  Based upon his consideration of the relevant issues and
these factors, the ALJ concluded that on or before the expiration
of his insured status, Plaintiff demonstrated only a mild degree
of limitation in the concentration, persistence and pace area of
functioning, and had no episodes of decomposition.  (Id. at 28.)
Thus, the ALJ's opinion shows that he did in fact consider

Plaintiff's memory impairments above and beyond his IQ and
dysthymic condition.

The Court is not "empowered to weigh the evidence or
substitute its conclusions for those of the [ALJ]." Williams,
970 F.2d at 1182.  Therefore, the Court is precluded from
independently determining whether certain evidence shows that
Plaintiff satisfied the requirements of Listing 12.05(C).
Instead, the ALJ's decision can only be overturned if it is found
that the ALJ was unreasonable in his review of Plaintiff's
professed inconsistent evidence, or overlooked that evidence.
Here, however, the ALJ considered all the evidence presented to
him and was reasonable in his consideration thereof.

In his recitation of the medical evidence, the ALJ
documented both Plaintiff's abilities and inabilities as reported
by his doctors.  For example, the ALJ noted Dr. Khona's finding
that an x-ray of Plaintiff's lumbar spine revealed moderate
degenerative joint disease throughout the lumbar spine. (Id. at
26.)  The ALJ also noted Dr. Goldberg's report, which showed that
Plaintiff expressed feelings of nervousness, panic, and sadness,
as well as having trouble sleeping, a mind cluttered with bad
memories, and thoughts of suicide.  (Id.)  Ultimately, however,

the ALJ found that Plaintiff did not satisfy the requirements of Listing 12.05(C).  Simply disagreeing with the ALJ's assessment is not sufficient to establish that his decision was not supported by substantial evidence.  Perkins v. Barnhart, 79 Fed. Appx. 512, 515 (3d Cir. 2003).  Here, the ALJ's conclusion was reasonable and supported by substantial evidence.

2.   Whether The ALJ Considered All of Plaintiff's Impairments In Combination, As Required by 20 C.F.R. § 416.923

Plaintiff asserts that "[t]he ALJ looked at each of [Plaintiff's] impairments individually," and that "[i]f all of [his] impairments were considered together it might change the ALJ's conclusion."  (Pl. Br. at 8.)  However, as noted by Defendant in its opposition,[9] the ALJ found there to be no evidence that any of Plaintiff's conditions beyond his low IQ were present prior to March 31, 1999.  (R. at 19, 24.)

---

[9] Plaintiff argues that Defendant's Opposition Brief was not filed within the deadline for doing so established by L. Civ. R. 9.1(a)(4).  The Court notes that Defendant's failure to comply with the Local Civil Rules is unacceptable.  Defense counsel is reminded of her obligation to abide by the Local Civil Rules and to make timely submissions or, if necessary, to seek reasonable extensions.  The Court, in its discretion, will nonetheless consider Defendant's Opposition Brief.  As noted by Plaintiff, "this particular tardiness was not substantial," and Plaintiff's counsel has a "policy to grant an initial request for an extension of 30 days without any reason."  (Pl. Rep. Br. at 1-2.)  For these reasons, the Court also declines to impose any other sanctions pursuant to L. Civ. R. 9.1(b).

Accordingly, there were no conditions to consider in combination prior to the expiration of Plaintiff's DIB coverage.

      3.   <u>Whether The ALJ Fully And Fairly Developed The Record Regarding Plaintiff's Memory Impairments and Dysthymia</u>

Plaintiff asserts that the ALJ failed to develop the record with respect to his memory impairment and dysthymia by not inquiring whether these conditions existed as of March 1999. (Pl. Br. at 9.)  As the ALJ noted, these conditions were first diagnosed by Dr. Goldberg in his reports, dated February 20, 2006 and March 8, 2006.  (<u>See</u> R. at 27, 301-14.)  After Dr. Goldberg's reports were made a part of the record, the ALJ gave Plaintiff's counsel the opportunity to respond to them.  On May 3, 2006, Plaintiff's counsel submitted comments in which he wrote that "[i]f it is necessary Dr. Goldberg should be asked if [Plaintiff's memory impairment and dysthymia] existed prior to March 31, 1999."  (<u>Id.</u> at 145.)

Although the ALJ never asked Dr. Goldberg these questions, the medical record before the ALJ contained substantial evidence that these conditions were not sufficient to impose significant work-related limitation of function.  Indeed, as the ALJ noted in his opinion, at the same time that Dr. Goldberg diagnosed

Plaintiff with dysthymia and memory impairment, he also found that Plaintiff had fair insight and fairly good judgment, was competent to manage his own finances, and did not show overt signs of intellectual deficiency. (Id. at 27.) The ALJ also considered the opinion of Dr. Khona from May 4, 2004 that Plaintiff showed no evidence of impaired judgment or significant memory loss. (Id. at 26.) The record also contains evidence from the 1998-1999 period showing that Plaintiff did not display any behavior suggestive of a significant psychiatric disorder. (Id. at 226.) Moreover, the record indicated that Plaintiff continued to be employed past the date that he was last insured, March 31, 1999, working well into June, 2000.

Where, as here, both medical and lay evidence tend to disprove disability at the time in question, the ALJ need not call upon the services of a medical advisor to establish an onset date. See Kelley v. Barnhart, 138 Fed. Appx. 505, 509 (3d Cir. 2005). Given the abundance of evidence cited by the ALJ in his opinion showing that neither Plaintiff's dysthemia or memory impairments rose to the level of an "other impairment" under Listing 12.05(C) on or before March 31, 1999, he was not required

24

to call upon Dr. Goldberg to establish an onset date for those conditions.

**III. CONCLUSION**

For the reasons stated above, the Commissioner's finding that Plaintiff is not disabled will be affirmed.  The accompanying order will be entered.


Date: March 5, 2009                 s/ Noel L. Hillman
                                    HON. NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey